UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
SUKHJINDER SANDHER,

                Petitioner,

      -against-

NEW YORK STATE,

                Respondent.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-2152 (FB)

*Appearances:*

*For the Petitioner:*
LABE M. RICHMAN, ESQ.
305 Broadway, Suite 100
New York, NY 10007

*For the Respondent:*
RICHARD A. BROWN, ESQ.
Queens County District Attorney
By: RANJANA C. PIPLANI, ESQ.
    Assistant District Attorney
125-01 Queens Boulevard
Kew Gardens, NY 11415

**BLOCK, Senior District Judge:**

      Sukhjinder Sandher ("Sandher") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his plea of guilty in New York Supreme Court, Queens County, to one count of conspiracy in the second degree for conspiring to solicit a contract to murder his wife. He claims that (1) his due process rights were violated because the sentencing judge failed *sua sponte* to vacate his plea or conduct further plea proceedings in light of certain exculpatory statements by Sandher in his presentence report; and (2) his appellate counsel rendered ineffective assistance by failing to raise the issue on direct appeal. For the following reasons, the petition is denied.

# I

On January 7, 1999, Sandher and his brother Arvinder Sandher ("Arvinder") were arrested and charged with Conspiracy in the Second Degree and Criminal Solicitation in the Second Degree for allegedly soliciting a contract to murder Sandher's wife. Sandher's trial counsel negotiated a plea deal, under which Sandher agreed to plead guilty to conspiracy in the second degree in exchange for a sentence of two and one-third to seven years' imprisonment.

During the plea proceeding, after Sandher formally entered his guilty plea, the court explained the rights and privileges that he was forfeiting by pleading guilty; Sandher acknowledged that he understood that he would indeed be sentenced to two and one-third to seven years. The court then asked Sandher whether he admitted by his plea

> that between the period of time December 12, 1998 and January 12, 1999, here in Queens County, that while acting together and in concert with [Arvinder], that with the intent that conduct causing the crime of murder in the second degree be performed, that you knowingly and wilfully agreed with one or more other persons to engage or cause that conduct?

Plea Tr. at 11. Sandher responded "Yes." *Id.* The court further inquired whether Sandher also admitted by his plea

> that in furtherance of such a conspiracy, and in order to effect the object of this conspiracy, committing the murder of another individual, that you committed at least these overt acts: That you made a payment of $500 as a down payment and the delivery of a photograph of the intended murder victim. And you provided the other person with whom you were entering into this agreement with a detailed description of the intended victim's daily activities[?]

*Id.* at 12. Sandher responded "Yes, please." *Id.* The court did not ask Sandher to recount the factual basis for the crime in his own words, but nothing in the plea transcript casts any doubts as to whether Sandher voluntarily, knowingly and unequivocally pleaded guilty to the conspiracy count.

2

Thereafter, in the presentence report ("PSR"), Sandher was reported as stating that he never "had any intentions on getting his wife killed but wanted to reprimand or scare her so that she will be faithful to him," and that he "later stopped the deal and asked his brother not to go with the plan, when he realized that it was wrong." PSR at 4.

At sentencing, Sandher confirmed that he had pleaded guilty to Conspiracy in the Second Degree. The court then imposed the promised sentence;[1] it did not question Sandher regarding the statements in the PSR, and the issue was not raised by Sandher or his counsel during the sentencing proceeding. At no time during the proceeding did Sandher ask to withdraw his plea.

Sandher appealed. His appellate counsel (who was not his trial counsel), supplemented by a *pro se* brief, challenged the validity of Sandher's plea on the grounds that the plea allocution was factually inadequate, and that Sandher was not advised by the court that he could be deported as a consequence of his plea; however, no reference was made to Sandher's statements in the PSR. The Second Department affirmed the judgment of conviction on the mistaken ground that Sandher's appellate counsel had certified, pursuant to *Anders v. California*, 386 U.S. 738 (1967), that there were no non-frivolous issues for appeal. *People v. Sandher*, 760 N.Y.S.2d 659 (2d Dep't 2003). The New York Court of Appeals denied leave to appeal. *See People v. Sandher*, 760 N.Y.2d 645 (2003).

Sandher then concurrently submitted to the Second Department, through new counsel,[2] a motion for reargument and an application for a writ of error *coram nobis*. In the reargument motion, Sandher's new counsel called the court's attention to its *Anders* brief error. He then set forth

---

[1] Sandher was released after being incarcerated for four and two-thirds years, and is currently the subject of deportation proceedings.

[2] Sandher's new counsel also represents him in the current *habeas* proceeding.

3

the details of the PSR, focusing specifically on Sandher's post-plea exculpatory statements, *see* Att'y Affirmation in Support of Def.'s Mot. to Reinstate Appeal at 11-21, and contended that "[w]hen presented with these assertions of innocence in the report, the Court did not make the required inquiry at sentencing." Mem. of Law in Support of Def.'s Mtn. to Reinstate Appeal at 15. In his *coram nobis* application, Sandher argued that his first appellate counsel's failure to raise this issue on appeal constituted ineffective assistance.

The Second Department granted Sandher's reargument motion and recalled its prior decision. *See People v. Sandher*, 785 N.Y.S.2d 87 (2d Dep't 2004). It then reaffirmed Sandher's judgment of conviction, holding that his argument that there was an inadequate factual plea allocution was unpreserved for appellate review because "defendant did not move to withdraw his plea before sentencing or to vacate the judgment of conviction." *Id.* It explained that the "narrow exception to the preservation rule described in *People v. Lopez*" did not apply because there was "nothing in the defendant's factual allocution which would negate an essential element of the crime pleaded to, cast significant doubt on his guilt, or otherwise call into question the voluntariness of his plea." *Id.* at 88 (citing *People v. Lopez*, 71 N.Y.2d 662 (1988)). The court further held that "[i]n any event, the defendant knowingly, voluntarily, and intelligently pleaded guilty." *Id.*[3] The New York Court of Appeals denied leave to appeal. *See People v. Sandher*, 4 N.Y.3d 802 (2005).

As for Sandher's *coram nobis* application, the Second Department summarily held, on the same day that it reaffirmed the judgment of conviction, that Sandher had "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Sandher*, 783 N.Y.S.2d

---

[3]The court also held that "defendant's further contention that he was denied the effective assistance of [trial] counsel because his attorney failed to advise him of the potential immigration consequences of his plea" was also unpreserved for appellate review, and was, "in any event . . .without merit." *Sandher*, 785 N.Y.S.2d at 88. Sandher has not pursued this issue in his *habeas* petition.

823 (2d Dep't 2004).

Thereafter, Sandher's new counsel moved the trial court to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. He argued, once again, "that [Sandher's] plea allocution was insufficient and that his statements in the presentence report negated his admission of guilt in the plea allocution." *People v. Sandher*, No. 339/99 (N.Y. Sup. Ct., Queens County, Decision & Order dated Apr. 21, 2005), *annexed to* Pet'r's Mem. of Law. The court held that the claims were procedurally barred "since these issue were previously determined and rejected on the merits by the Appellate Division." *Id.* Sandher also once again argued that his trial counsel was ineffective for failure to warn him of the immigration consequences of his plea; the court noted that this claim was procedurally barred because it, too, had been previously rejected by the Appellate Division. *See id.* The court also addressed a further claim of ineffective assistance of trial counsel "on the basis that [Sandher's] attorney failed to bring any of his possible defenses before the court," *id.*, rejecting it summarily because the allegations were made "solely by him" and "were unsubstantiated by any other evidence," *id.*; it also held that the claim was without merit because "the defendant received an advantageous plea and the record does not cast doubt on the apparent effectiveness of counsel." *Id.* Leave to appeal was denied by the Appellate Division.

Sandher has timely brought this *habeas* proceeding, and raises two fully exhausted issues: (1) that the state court violated his due process rights by failing *sua sponte* to vacate his plea or conduct additional fact allocution in the face of Sandher's statements in the PSR, which -- Sandher alleges -- demonstrated his lack of intent to kill his wife and renunciation of the conspiracy; and (2) that his initial appellate counsel rendered ineffective assistance by failing to cite these PSR statements in support of his direct appeal.

**II**

5

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs Sandher's petition, where a claim is disposed of on the merits by a state court, relief may not be granted unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). Where a state court "fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits," a *habeas* court must "focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." *Wilson v. Mazzuca*, 570 F.3d 490, 499 (2d Cir. 2009).

If, instead of reaching the merits, a state court denies a claim based on an "independent and adequate state procedural rule," federal *habeas* review of the claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrate that failure to consider the claim "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The procedural bar will apply even if, in the alternative, the state court also rejects the merits of a claim. *See Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding so long as it explicitly invokes a state procedural rule as a separate basis for its decision.").

**A. Failure of the State Court to Consider Sandher's Statements in the PSR**

Whether Sandher's argument is conceptualized as a claim that under state law the sentencing court had a *sua sponte* duty to revisit the viability of Sandher's plea, or that the failure to do so constituted a constitutional violation under the Due Process Clause, the argument is, in either

6

event, meritless.

In contending otherwise, Sandher points out that under New York law "where a defendant's factual recitation negates an essential element of the crime pleaded to," it is error for a court to "accept a guilty plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered." *People v. Lopez*, 71 N.Y.2d 662, 666 (1988) (citing *People v. Serrano*, 15 N.Y.2d 304 (1965)). While Sandher acknowledges that nothing in his plea allocution meets this standard, he argues that, under this line of cases, "[t]he statement negating guilt may take place after the plea but before sentence." Second Am. Pet. at 19 (citing *People v. Polanco*, 466 N.Y.S.2d 92 (2d Dep't 1983)). However, *Polanco* held only that vacatur of the guilty plea at issue was warranted because "the facts of the case were so consistent with a defense of justification that the trial court observed at the plea proceeding that a serious question of self-defense was presented." 466 N.Y.S.2d at 92. Therefore, Sandher's state law argument is without merit since, unlike *Polanco*, the state court was "under no obligation to make a *sua sponte* inquiry into defendant's post plea assertion of innocence contained in the presentence report." *People v. Santos*, 848 N.Y.S.2d 57, 58 (1st Dep't 2007); *see also People v. Pantoja*, 721 N.Y.S.2d 535, 535 (1st Dep't 2001) ("Since nothing in defendant's plea allocution cast doubt on the voluntariness of his plea, and since defendant made no motion to withdraw his plea, the court was under no obligation to conduct a *sua sponte* inquiry into defendant's denial of guilt to the probation officer preparing the presentence report." (internal citations omitted)). Because Sandher's plea allocution contained no indication of the defenses alluded to in the PSR, the sentencing court had no duty to inquire into the viability of Sandher's plea.

In any event, "federal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); 28 U.S.C. § 2254(a). Sandher's *habeas* claim can only

7

be viable under AEDPA, therefore, if the failure of the sentencing court to *sua sponte* revisit the voluntariness of Sandher's plea constituted a violation or misapplication of clearly established federal law as announced by the Supreme Court. There is no Supreme Court law imposing such a duty on the sentencing court. The constitutional touchstone by which all pleas are assessed is simply whether they were intelligently and voluntarily made, *see Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984), and the Appellate Division ruled that Sandher "knowingly, voluntarily, and intelligently pleaded guilty." *Sandher*, 785 N.Y.S.2d at 88.

In challenging that determination, Sandher relies on *Boykin v. Alabama*, 395 U.S. 238 (1969), in which the Supreme Court held that a guilty plea was not knowingly and intelligently made where "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." *Id* at 239. Sandher's reliance on *Boykin* is misplaced because the court here carefully explained Sandher's rights to him; addressed focused questions to Sandher detailing the nature and basis of the charge; explained the sentence that would be imposed; and solicited from Sandher his acknowledgment that he understood the basis for his plea, the rights he was waiving by pleading guilty, and the term of his incipient incarceration. *See* Plea Tr. at 7-10.

Sandher also relies upon the strictures of Rule 11 of the Federal Rule of Criminal Procedure, which govern the procedures for the taking of a guilty plea in federal court. However, a trial court's failure to abide by the mandates of Rule 11 is not a violation of due process. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("[T]he violation claimed was of Rule 11, not of due process."); *see also Moran v. United States*, 96-CV- 3657, 1998 WL 54616, at *3 (S.D.N.Y. 1998) ("[I]t is important to recognize that it is the technical requirements of Rule 11, not due process, that require federal courts to conduct a factual inquiry before accepting a guilty plea."). As the Second Circuit has explained, as long as a guilty plea is voluntary and intelligent, the Due Process

Clause "does not mandate a factual basis inquiry by state courts." *Willbright v. Smith*, 745 F.2d at 780.

In sum, the Appellate Division did not contravene clearly established Supreme Court law in rejecting Sandher's contention that the sentencing court had a constitutional obligation *sua sponte* to revisit the voluntariness of his plea because of the unsworn statements contained in the PSR. In addition, nothing in the record suggests that the Appellate Division unreasonably or even incorrectly applied Supreme Court precedent in determining that Sandher's plea was voluntarily and intelligently made.

**B. Ineffective Assistance of Appellate Counsel for Omitting the PSR Statements**

With respect to his ineffective assistance of appellate counsel claim, Sandher argued in his *coram nobis* application that his initial appellate counsel was deficient in failing to cite the exculpatory statements in the PSR in support of his appeal. *See* Second Am. Pet. at 24 ("[Sandher] would have won the appeal had the omission not been made."). Although the Appellate Division summarily denied this ineffective assistance claim on the merits, it cannot be held that its unexplained decision was nonetheless an unreasonable application of clearly established Supreme Court precedent under *Strickland v. Washington*, 466 U.S. 668 (1984) (establishing two-prong standard that counsel's representation must fall below an objective standard of reasonableness, and that there be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Since the sentencing court was under no constitutional or state law obligation *sua sponte* to revisit the viability of Sandher's plea simply because of his gratuitous unsworn statements in the PSR, Sandher's first appellate counsel cannot be faulted for failing to make a non-meritorious argument, and the Appellate Division's rejection of the *coram nobis* application cannot be viewed as an unreasonable application of clearly established Supreme

Court law.

## III

Sandher's *habeas* petition is denied. Because he has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED**.

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 29, 2009